## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jan 13 2016, 7:46 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Octavia Florence Snulligan | Aaron E. Haith |
| Indianapolis, Indiana | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jerry Washington, | January 13, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 49A02-1501-DR-51 |
| v. | Appeal from the Marion Superior Court. |
| | The Honorable Theodore M. Sosin, Judge. |
| Phyllis Washington, | The Honorable Burnett Caudill, Magistrate. |
| *Appellee-Plaintiff.* | Cause No. 49D02-0404-DR-814 |

**Friedlander, Senior Judge**

[1] Jerry Washington appeals the trial court's grant of Phyllis Washington's motion for relief from judgment in their dissolution of marriage case. We affirm in part, reverse in part, and remand.

[2] Jerry raises three issues, which we consolidate and restate as: whether the trial court abused its discretion in granting Phyllis' motion for relief from judgment.

[3] Phyllis filed a petition to dissolve her marriage with Jerry. On April 13, 2006, the trial court issued a decree of dissolution of marriage. At the time the court issued the decree, Jerry was employed by the Indianapolis Fire Department. The fire department offered a pension benefit for its employees, and Jerry participated in the pension plan.

[4] The court determined that Phyllis was entitled to one-half of Jerry's pension, or $50,471.11. The court further ordered as follows:

> Husband's attorney shall immediately prepare a Qualified Domestic Relations Order providing Wife with her above noted share of the account, plus or minus any forced market changes that have occurred since the date of final separation. The Order shall first be submitted to Wife's attorney for approval and then to the Court before it is forwarded to Husband's employer.

Appellant's App. p. 12. Jerry did not appeal the decree.

[5] Jerry's attorney drafted a qualified domestic relations order (QDRO). On August 30, 2006, the trial court issued the QDRO. The QDRO stated that Phyllis was an alternate payee of the account and was entitled to "receive a portion of the participant's benefits payable under any employer sponsored defined benefit retirement plan." *Id.* at 17. The QDRO further explained that Phyllis was entitled to receive $50,471.11 from Jerry's pension plan. *Id.* at 18-19. In addition, the QDRO provided:

> In the event the administrator [of the Plan] determines that this order is not a Qualified Domestic Relations Order, both parties shall cooperate with the administrator to make the changes necessary for it to become a qualified order. This includes signing all documents, which may be necessary for the parties to obtain an amended order that meets the requirements for a

Qualified Domestic Relations Order. For this purpose, the court expressly reserves jurisdiction over the dissolution proceeding involving the participant and the alternate payee and the participant's interest in the plan.

*Id.* at 21-22. Jerry did not seek appellate review of the QDRO or otherwise challenge its directives.

[6] Unfortunately, there was a complication of which the parties and the trial court were unaware at the time the court issued the QDRO: the police officers' and firefighters' pension fund, which is managed by the State of Indiana, is not required to honor QDROs. To the contrary, the fund "is not authorized by law to split payments between payees and will not make any payments directly to a Fund Member's alternate payee under a QDRO." *Id.* at 30.

[7] In the QDRO, the court directed the trial court clerk to distribute the order to the parties, but neither the decree of dissolution nor the QDRO specified which party was required to submit the QDRO to the agency that managed Jerry's pension plan. The record does not indicate whether either party submitted the QDRO to the agency after it was issued and what response, if any, the agency had to the order.

[8] Jerry retired from the fire department on May 31, 2013, and began drawing his pension. At that point, Phyllis contacted the agency that managed the pension plan and discovered that the QDRO would not be honored.

[9] On September 23, 2013, Phyllis filed a motion for relief from judgment pursuant to Indiana Trial Rule 60(B). She asked the trial court to amend the

dissolution decree and to order Jerry to pay her the $50,471.11 that he owed her. Jerry filed a response, and the court held oral argument.

[10] Next, the court issued an order in which it noted that Phyllis was entitled to her $50,471.11 share from Jerry's pension and stated: "the implementation of how the proceeds were to be distributed should not create a result where [Phyllis] does not receive what is rightfully hers." *Id.* at 32. As a result, the court set aside the paragraph of the dissolution decree that established the QDRO as the method by which Jerry was to transfer to Phyllis her share of his pension. The court further directed the parties to present a "viable solution to this matter." *Id.* at 33.

[11] On August 25, 2014, the court held further oral argument. The parties told the court that they were unable to agree upon a settlement. Jerry did not dispute that he owed Phyllis half of his pension and asked the court to allow him to pay Phyllis in installments twice a year for ten years.

[12] On December 22, 2014, the court issued a second order, which provided in relevant part:

> [Jerry] shall set aside in a dedicated account $1,000.00 per month, payable to [Phyllis], to be paid each month to coincide with the receipt from his pension plan, or may be paid directly from his pension with PERF if it can be arranged by [Jerry].

> [Phyllis] shall have a judgment of $14,000.00 against [Jerry] for failure to contribute any funds from his pension to [Phyllis].

*Id.* at 34. This appeal followed.

[13] A grant of relief under Indiana Trial Rule 60 is within the equitable discretion of the trial court. *Outback Steakhouse of Florida, Inc. v. Markley*, 856 N.E.2d 65 (Ind. 2006). We review the grant or denial of a motion for relief from judgment for an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's decision is contrary to the logic and effect of the facts and circumstances before the court. *Verta v. Pucci*, 14 N.E.3d 749 (Ind. Ct. App. 2014). We will not reweigh the evidence in conducting this review. *Levin v. Levin*, 645 N.E.2d 601 (Ind. 1994).

[14] Indiana Trial Rule 60(B) provides, in relevant part

> On motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons:
>
> (1) mistake, surprise, or excusable neglect;
>
> * * * *
>
> (8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4).
>
> The motion shall be filed within a reasonable time for reasons (5), (6), (7), and (8), and not more than one year after the judgment, order or proceeding was entered or taken for reasons (1), (2), (3), and (4). A movant filing a motion for reasons (1), (2), (3), (4), and (8) must allege a meritorious claim or defense.

[15] Jerry first claims that the trial court erred in granting relief to Phyllis because her motion was, in essence, a claim for relief under subsection (1), and her motion was untimely because it was not filed within one year of the issuance of

the judgment. Phyllis responds that the trial court retained jurisdiction over the case to address issues related to the division of Jerry's pension.

[16] Under the terms of the QDRO, which Jerry's attorney drafted, the trial court retained "jurisdiction over the dissolution proceeding involving the participant and the alternate payee and the participant's interest in the plan." Appellant's App. p. 22. That provision authorized the trial court to take action on Phyllis' motion for relief from judgment.

[17] In addition, a dissolution court may exercise continuing jurisdiction over a case to reexamine a property settlement if necessary to clarify a prior order. *Evans v. Evans*, 946 N.E.2d 1200 (Ind. Ct. App. 2011). A dissolution court's power to decide questions pertaining to marital property includes by implication the power to interpret its own decree. *Fackler v. Powell*, 839 N.E.2d 165 (Ind. 2005). Under such circumstances, the court is not bound to treat a motion for relief from judgment as subject to Indiana Trial Rule 60(B)(1) rather than Rule 60(B)(8). *See Evans*, 946 N.E.2d 1200 (trial court had the power under Trial Rule 60(B) to consider a party's request to implement a different way to split a pension benefit when a QDRO could not be used to transfer funds, even though several years had elapsed since the judgment was issued).

[18] Next, Jerry argues that even if the trial court had jurisdiction to consider Phyllis' motion under Trial Rule 60(B)(8), the motion was untimely. Motions for relief from judgment pursuant to Indiana Trial Rule 60(B)(8) must be filed within "a reasonable time." The determination of what constitutes a reasonable

time varies with the circumstances of each case. *G.B. v. State*, 715 N.E.2d 951 (Ind. Ct. App. 1999). Relevant to the question of timeliness is prejudice to the party opposing the motion and the basis for the moving party's delay. *Id.*

[19] There was a seven-year delay between the issuance of the QDRO and Phyllis' filing of her motion for relief from judgment. Jerry contends that the delay was unreasonable because Phyllis should have asked the pension plan manager years earlier whether the QDRO had been accepted, or, at the least, her attorney "should have advised her to expect additional documents" from the fund and take action when none arrived. Appellant's Br. p. 11. Phyllis responds that Jerry, as the party that prepared the QDRO, bore responsibility for delivering it to the pension plan manager and discovering any problems with the QDRO's implementation.

[20] The trial court did not direct either party to submit the QDRO to the pension fund manager. It follows that Phyllis is not solely at fault for the parties' failure to discover that the QDRO was invalid until after Jerry retired. In addition, Jerry was as capable as Phyllis of monitoring whether the QDRO was accepted by the plan manager because he was the primary beneficiary. Phyllis obtained counsel and filed her motion for relief from judgment within four months of learning that the QDRO had been rejected.

[21] Jerry also argues in connection with the question of reasonableness that he was unduly prejudiced by the delay. Specifically, he asserts he declared bankruptcy in 2008, and if the QDRO problem had been discovered earlier and the trial

court had issued its judgment before the bankruptcy proceeding, the judgment would have been dischargeable in bankruptcy. Responsibility for any bankruptcy consequences cannot be attributed to Phyllis. Jerry, as the party petitioning for bankruptcy, was in a better position to catalogue his assets and liabilities at the time of filing, and he could have determined whether the QDRO was valid and what impact his obligation to Phyllis would have on his bankruptcy estate. The trial court did not abuse its discretion by determining that Phyllis' motion for relief from judgment was timely. *See Fairrow v. Fairrow*, 559 N.E.2d 597 (Ind. 1990) (delay of eleven years to file motion for relief from judgment was reasonable where the movant had no reason to believe the dissolution decree was invalid until learning of a problem years later).

[22] Next, Jerry claims the court erred in granting Phyllis' motion because she failed to prove that she is entitled to relief. He argues that Phyllis' attorney should have known that the pension plan manager was barred by statute from honoring the QDRO. Phyllis responds that she is entitled to her share of Jerry's pension and that he is at least as much at fault as she is for failing to discover the QDRO problem.

[23] To obtain relief under Indiana Trial Rule 60(B)(8), a party must establish a "meritorious claim or defense." Stated differently, "The burden is on the movant to demonstrate that relief is both necessary and just." *Levin*, 645 N.E.2d at 604.

[24] Jerry did not appeal the trial court's award of half of his pension to Phyllis, nor did he contest the QDRO. He drafted the QDRO, which restated the court's decision that Phyllis was entitled to half of his pension. Further, the QDRO provided that if the QDRO was rejected by the agency that managed Jerry's pension plan, Jerry was obligated to work with Phyllis to establish a valid method for her to get her share of his pension. The trial court's order directing Jerry to pay Phyllis by another method did not alter either party's share of the marital estate but rather clarified the method by which Phyllis would receive the marital property to which she was entitled under the decree. Phyllis' request for relief was necessary and just, and the court's clarification was not an abuse of discretion. *See Case v. Case*, 794 N.E.2d 514 (Ind. Ct. App. 2003) (trial court's alteration of the amount wife received from husband's 401(k) was not an abuse of discretion where the alteration preserved the original allocation of assets under the divorce decree).

[25] Jerry also challenges the trial court's entry of judgment against him in the amount of $14,000 for his "failure to contribute any funds from his pension to [Phyllis]." Appellant's App. p. 34. Having reviewed the record, we conclude that the amount of the award is not supported by any evidence. The trial court held oral arguments instead of evidentiary hearings. In addition, the court did not explain how it calculated that Phyllis was owed $14,000. Phyllis never requested a retroactive award of damages. Instead, she consistently asked the court to set up a prospective schedule of payments. In the absence of evidence, we must conclude that the entry of judgment in the amount of $14,000 was

contrary to the logic and effect of the facts before the court. *See Verta*, 14 N.E.3d 749 (reversing the trial court's denial of a motion to correct error because there was no evidence that the court's judgment had been served upon the appellant). We reverse the entry of judgment against Jerry in the amount of $14,000, leaving intact Jerry's obligation to pay Phyllis $1,000.00 per month until he has paid the $50,471.11 that he owes her. We remand for the court to issue a corrected order.

[26] Jerry further claims that the trial court erred by failing to consider the tax consequences of the installment plan.[1] He says that the tax consequences of the court's judgment are more severe for him now that he is retired and effectively result in an unequal distribution of the marital estate. We disagree. Now that Jerry is retired, any payment arrangements would likely result in some financial hardship to him. On appeal, Jerry does not identify any other payment arrangements that would reduce his financial challenges but also fulfill his obligation to Phyllis under the decree. In addition, at the time the court issued its December 22, 2014 order, Phyllis had been deprived of her share of the pension payments for over a year and a half. Finally, there is no evidence in the record as to the tax consequences Jerry will experience as a result of creating and funding the dedicated account as ordered by the court. *See Qazi v. Qazi*, 546

---

[1] In a related argument, Jerry contends that the trial court's failure to consider the tax consequences of its decision violated his constitutional rights, but he does not identify any federal or state constitutional provisions that were allegedly violated by the trial court's order. He has waived this contention for appellate review. *See Wright v. Wright*, 471 N.E.2d 1240 (Ind. Ct. App. 1984), *trans. denied*.

N.E.2d 866 (Ind. Ct. App. 1989) (trial court did not err by failing to calculate potential tax liabilities to a party for payments to the party's ex-spouse because the tax consequences were speculative), *trans. denied*.

[27] The December 22, 2014 order has one tax-related shortcoming. In Phyllis' motion for relief from judgment, she conceded that if Jerry set up a system of payments for her half of the pension, she would "be responsible for paying" income taxes for those payments. Appellant's App. p. 28. The trial court's order should have stated that Phyllis will be required to pay income taxes on all funds she receives from Jerry, and it is necessary to remand to the trial court with instructions to issue an order clarifying her tax obligations.

[28] For the foregoing reasons, we affirm the judgment of the trial court in part, reverse in part, and remand for the two corrections noted above.

[29] Judgment affirmed in part, reversed in part, and remanded.

Vaidik, C.J., and Brown, J., concur.