# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**DALE W. ARNETT**
Winchester, Indiana

ATTORNEYS FOR APPELLEE:

**ALAN S. TOWNSEND**
**STEPHEN C. UNGER**
Bose McKinney & Evans LLP
Indianapolis, Indiana

**FILED**

Nov 29 2012, 8:47 am

**CLERK**
of the supreme court,
court of appeals and
tax court

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TERRY and LAURA WAGLER, | ) | |
| LARRY and JENNIFER WAGLER, | ) | |
| NORMAN WAGLER, and JANET | ) | |
| and NATHAN WAGLER, | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 14A01-1109-PL-427 |
| | ) | |
| WEST BOGGS SEWER DISTRICT, INC., | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

CONSOLIDATED APPEAL FROM THE DAVIESS CIRCUIT COURT
The Honorable Gregory A. Smith, Judge
The Honorable Mark R. McConnell, Special Judge
Cause Nos. 14C01-1003-PL-121, 14C01-1003-PL-122, 14C01-0902-PL-62, 14C01-0902- PL-64

**November 29, 2012**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

This is a consolidated appeal from various proceedings in which the West Boggs Sewer District ("West Boggs") brought complaints against Terry and Laura Wagler ("Terry & Laura"), Larry and Jennifer Wagler ("Larry & Jennifer"), and Norman Wagler (collectively, the "Waglers"), as well as Janet and Nathan Wagler ("Janet & Nathan," and together with the Waglers, the "Appellants"),[1] pursuant to Ind. Code § 8-1-2-125(d) (2004),[2] to compel Appellants to connect to its sewer system (the "Sewer System"). The Waglers appeal from the denial of their respective Rule 60(B) motions to set aside judgment, and Janet & Nathan appeal from the trial court's entry and judgment following a bench trial. The Appellants present multiple issues which we revise and restate as:

I.      Whether the court abused its discretion by denying the Waglers' motions for relief from judgment pursuant to Ind. Trial Rule 60(B); and

II.     Whether the court erred in directing Janet & Nathan to connect to the Sewer System.

Additionally, West Boggs appeals the trial court's denial of its requests for an award of attorney fees and costs against each party that filed an Ind. Trial Rule 60(B) motion, and it requests that we award it appellate attorney fees against each of the Appellants. We affirm.

---

[1] West Boggs brought a complaint against Terry & Laura under Cause No. 14C01-1003-PL-121, and against Larry & Jennifer under Cause No. 14C01-1003-PL-122, in the Daviess County Circuit Court with Judge Gregory A. Smith presiding over each case. West Boggs brought a complaint against Norman under Cause No. 14C01-0902-PL-064, and against Janet & Nathan under Cause No. 14C01-0902-PL-062, in the Daviess County Circuit Court with Special Judge Mark R. McConnell presiding, following requests by each of the appealing parties for a change of judge.

[2] This statute was subsequently amended by Pub. L. No. 97-2012, § 1 (eff. July 1, 2012). Among other things, the amendment allows for property owners to be exempted from a requirement to connect to a not-for-profit sewer system, if certain conditions are met, for a period of ten years with the possibility of two five-year extensions as provided in subsections (e), (f), (g), and (h). We also note that the Appellants do not argue that the amended statute applies to their cases.

## FACTS AND COURSE OF PROCEEDINGS

West Boggs, a not-for-profit utility, installed sanitary sewer infrastructure (the "Sewer System") adjacent to parcels of property owned by the Appellants, who are members of an Old Order Amish community in Loogootee, Indiana.[3] On September 4, 2008, an attorney acting on behalf of West Boggs sent letters to Norman and Janet & Nathan by certified mail which stated in part:

> Pursuant to I.C. §8-1-2-125, a not for profit utility, such as [West Boggs], may require connection to its sewer system of property producing sewage or similar waste and require the discontinuance of use of privies, cesspools, septic tanks, and similar structures, if there is an available sanitary sewer within three hundred feet of the property line. [West Boggs'] sanitary sewer facilities are within three hundred feet (300) of your property line, and [West Boggs] is hereby notifying you that the system is now operational and that connection should be made by this property to [West Boggs'] system on or before **December 04, 2008**.
>
> Please contact the [West Boggs] office to arrange connection or with any questions you might have regarding the utility or this process. . . .

Norman's Appendix at 106; Janet & Nathan's Appendix at 85.[4] On February 10, 2009, West Boggs filed complaints against each requesting an order requiring them to "promptly" connect to the Sewer System and pay all of the associated costs. Norman's Appendix at 104-105; Janet & Nathan's Appendix at 83-84.

---

[3] We observe that West Boggs' Consolidated Brief notes that "[t]he record [] does not indicate or suggest that [Janet & Nathan] are Amish, nor do they raise any objections now on religious grounds." Appellee's Consolidated Brief at 12.

[4] The record contains three appellants' appendices. An appendix which corresponds with Terry & Laura's case and Larry & Jennifer's case consists of a two-volume appendix, and we will refer to this appendix as "Volume I" and "Volume II," respectively. We will refer to the appendix corresponding with Norman's case as "Norman's Appendix," and the appendix corresponding with Janet & Nathan's case will be referred to as "Janet & Nathan's Appendix."

On March 2, 2009, Marilyn A. Hartman entered appearances on behalf of both Norman and Janet & Nathan and requested an extension of time to answer the complaint, which was granted. On April 2, 2009, both Norman and Janet & Nathan filed answers and motions for change of venue from the judge, and on April 14, 2009, the court granted their motions. The court directed that the defendants were to strike first from a panel of three prospective judges, but they failed to do so. On November 6, 2009, West Boggs filed its strike along with motions to set a pre-trial conference. On January 26, 2010, West Boggs filed a Request for Court to Strike from Panel on Behalf of Defendants in each case, and the next day, January 27, 2010, both Norman and Janet & Nathan filed their strike. On March 1, 2010, Judge Mark R. McConnell assumed jurisdiction over those cases.

Also, on December 2, 2009, West Boggs initiated contact with Terry & Laura and Larry & Jennifer by sending letters by certified mail making statements similar to the previous letters and specifically stating that West Boggs "is hereby formally notifying you that the system is operational and that **connection should be made by this property to [its] system on or before March 01, 2010**." Volume I Appendix at 135; Volume II Appendix at 274. On March 19, 2010, West Boggs filed complaints against Terry & Laura and Larry & Jennifer similarly requesting that the court order them to connect to the Sewer System. On April 7, 2010, Marilyn A. Hartman entered appearances on behalf of both couples in their respective cases and filed a motion for an extension of time to file an answer in each case which the court granted. On July 13, 2010, the court set trial dates for January 20, 2011, in the action against Terry & Laura and March 17, 2011, in

4

the action against Larry & Jennifer. The court also entered an order referring each case for mediation.

On January 20, 2011, Terry & Laura and West Boggs appeared and West Boggs requested that the hearing be vacated as the parties had reached an agreement. On January 21, 2011, the court issued an agreed entry and judgment signed by Hartman on behalf of Terry & Laura wherein they were ordered to connect to the Sewer System, and it laid out the specific steps and applicable time frame they were to follow in doing so, including obtaining an estimate on installing a grinder pump within fifteen days of the entry of the judgment and having a fully operational and functional connection within ninety days. On March 2, 2011, the court issued an agreed entry and judgment signed by Hartman on behalf of Larry & Jennifer which was substantially similar to Terry & Laura's agreed entry.

On April 13, 2011, West Boggs filed verified motions for rule to show cause against both Terry & Laura and Larry & Jennifer in which it stated that "since the entry of the judgment, Defendants have wholly failed to comply with the terms thereof" and asked the court "to order the Defendants to appear and show cause why they should not be held in contempt for their failure to comply," and requested hearings and attorney fees on their motions. Volume I Appendix at 5, 79-80; Volume II Appendix at 142, 218-219. On April 25, 2011, Attorney Dale W. Arnett filed appearances on behalf of each couple, and on April 28, 2011, Hartman filed motions to withdraw in each action which the court granted. On May 12, 2011, each couple filed identical motions to set aside judgment pursuant to Ind. Trial Rule 60(B)(8), relying upon the First Amendment and Article 1,

5

Sections 2 and 3 of the Indiana Constitution and specifically arguing that "[t]he Defendants are Amish, and historically the Amish have believed they are a peculiar people and should be living separate and apart from the outside world the best that they can," that "[a]s such, they have rejected public utilities including electricity from the power grid," and that "[b]oth the use of the electricity from the public grid and being on a 'public utility' sewer infringe upon the Amish way of life and sincerely held religious beliefs." Volume I Appendix at 71-72; Volume II Appendix at 209-210. They argued in their motions that "Trial Rule 60 (B) (8) should be liberally construed to allow a court to vacate a judgment within the residual power of a court of equity to do justice" because "they authorized their attorney to sign the agreed judgment, not realizing they had a meritorious defense and protection of one's constitutional rights are of the utmost importance in our present legal system."[5] Volume I Appendix at 71; Volume II Appendix at 209.

On June 9, 2011, West Boggs filed responses to the couples' motions and requests for attorney fees. On August 1, 2011, the court held a consolidated hearing on the show cause motions and the motions to set aside in which the following colloquy occurred between Larry Wagler and Attorney Arnett:

Q. Why did you give [Hartman] permission to sign it?

A. Plain words, I was told that there's no future here, I basically had a gun to my head, or however you want to say it, that I talked to her

_____

[5] The motions to set aside also raised Ind. Trial Rule 60(B)(1) and stated that they "were mistaken in believing they had no further defense to the lawsuit . . . when in fact, they have a 1st Amendment defense and also a defense including Article 1 Sections 2 and 3 of the Indiana Constitution." Volume I Appendix at 70; Volume II Appendix at 208. On appeal, the Waglers do not argue that the court erred in not granting their motions to set aside pursuant to Ind. Trial Rule 60(B)(1).

that day and she told me that she didn't know the constitution. . . . I'm very clear with that today, because Mr. Townsend has addressed that we didn't state this one time in the Court's record about our biblical beliefs. . . .

* * * * *

Q. When that agreement was signed, was that what you wanted to do?

A. No.

Q. Had you ever brought up your religious beliefs through your former attorney, to Ms. Hartman?

A. Yes, we talked about that.

Q. But, that avenue had not been pursued?

A. It had never been pursued. I will take responsibility for some of that.

August 1, 2011 Transcript at 42-43. At the conclusion of the hearing, the court asked the defendant couples to prepare a supplemental brief addressing whether an agreed entry may be set aside pursuant to Ind. Trial Rule 60(B) which were submitted on August 26, 2011.

On September 6, 2011, the court issued an Order on Trial Rule 60 (B) Motion denying the motions to set aside and stating in part:

6. A hearing was held in this cause on August 1, 2011, wherein the defendants asserted that connecting onto the sewer line premises or any other public utility violated their religious beliefs.

7. This Court does not doubt the sincerity of the defendants' religious beliefs, nor does this Court attempt to condemn or condone such beliefs.

8. The defendants acknowledged they had read the terms of the Agreed Entry, they had legal counsel representing them at the time, they discussed the Agreed Entry with counsel, and they voluntarily signed the Agreed Entry.

7

9.  That despite claiming to have such religious beliefs or convictions, the defendants signed the Agreed Entry knowing that it required them to hook onto the plaintiff's sewer line and did not raise any objections or defenses until filing of their motion to set aside some five months later by different counsel.

10. The defendants claimed at the hearing that they felt they were forced under duress or coercion to sign the agreement (akin to having a gun held to their head) in spite of their religious convictions.

11. However, the law in Indiana clearly provides that a trial Court has no authority to modify or change an agreed judgment. Instead like any contract, a contracted for agreed judgment can only be modified by the parties. Evans v Evans, 946 N.E.2d 1200 (Ind. Ct. App. 2011); State of Indiana v Indiana Waste Systems, Inc., 603 [N.E.2d] 181, 186 (Ind. Ct[.] App. 1992).

12. Thus, Trial Rule 60 (B) is not applicable to modify an Agreed Judgment. Siegel v Williams, 818 [N.E.2d] 510, 514 ( Ind. Ct. App. 2004) [sic].

13. In both cases now before this Court, the Waglers resolved in the lawsuit with [West Boggs] with full knowledge as to what they were signing and under advice of counsel. Therefore, this Court is powerless at this time to set aside the Agreed Entry . . . .

14. Therefore, the Court may not consider whether or not the Waglers have a meritorious defense or even whether the statute impacts on the free exercise of the defendants' religion, nor may the Court consider whether or not the statute is secular in nature and does not advance or inhibit the religious beliefs of the defendants.

Volume I Appendix at 45-46; Volume II Appendix at 183-184.[6] West Boggs subsequently filed nearly identical verified motions for an award of attorney fees and costs requesting judgments of $5,258.15 against Terry & Laura and $5,689.75 against Larry & Jennifer. The court denied West Boggs' motion against Larry & Jennifer on

---

[6] The court's order did not address West Boggs' motions to show cause.

September 16, 2011 and against Terry & Laura on September 20, 2011 by entry on the respective chronological case summaries (the "CCS").

In West Boggs' action against Norman, the court set a trial date for October 19, 2010, which was continued until February 25, 2011. On February 17, 2011, Attorney Hartman withdrew from her representation of Norman. On February 25, 2011, in advance of trial, the parties advised the court that they had reached an agreement, and the court vacated the hearing. On March 1, 2011, the court entered an Agreed Entry and Judgment in Norman's case which was signed by Norman and which was substantially similar to the other agreed entry and judgments.

On April 13, 2011, the same day it filed similar motions against Terry & Laura and Larry & Jennifer, West Boggs filed a verified motion for rule to show cause against Norman which was substantially similar to the other show cause motions. On April 25, 2011, Attorney Dale W. Arnett filed an appearance. On May 12, 2011, Norman filed a motion to set aside pursuant to Ind. Trial Rule 60(B), and on June 9, 2011, West Boggs filed its response to Norman's Rule 60(B) motion to set aside judgment and request for attorney fees.

After multiple continuances were filed by Norman and granted by the court, on September 16, 2011 the court held a hearing on West Boggs' motion for rule to show cause and Norman's motion to set aside. On October 7, 2011, the court issued orders concerning each motion. First, the court found Norman in contempt of court but also ordered that Norman:

> may purge himself of this contempt and the requirement that he pay [West Boggs'] attorney fees herein, if he complies with the terms of the Agreed

9

Entry and Judgment and [his] house is connected to the sewer system and [is] fully operational and functional within sixty (60) days from the date of this Order. If [Norman] fails to do so he shall be responsible for [West Boggs'] reasonable attorney fees in the sum of Three Hundred Dollars ($300.00) and shall be fined $5.00 per day for each additional day, after sixty (60) days, on which [he] has not connected to the sewer system as required herein.

Norman's Appendix at 13-14. The court also denied Norman's 60(B) motion, noting that it was "premised upon his allegation that he signed the Agreed Judgment under the mistaken belief that he had no further defense to the lawsuit" but that "[h]e now claims that the First Amendment to the U.S. Constitution and Article 1 Sections 2 and 3 of the Indiana Constitution provide him with a defense" because "he is a member of the Old Order Amish Church and that the tenets of the church prohibit its members from using electricity," but that "[e]ven if [Norman] had shown a mistake or other reason justifying relief from the operation of the judgment, [he] would still have to prove a meritorious defense" and "has not done so." Id. at 16.

Regarding West Boggs' action against Janet & Nathan, on April 12, 2011, the court set a trial date of August 19, 2011. On April 13, 2011, Attorney Arnett entered an appearance on their behalf, and on April 18, 2011, Attorney Hartman withdrew her representation of them. Janet & Nathan requested a continuance which was granted, and a bench trial was set for September 16, 2011. In advance of the hearing, on September 12, 2011, Janet & Nathan filed a motion to dismiss. On September 16, 2011, the court denied the motion to dismiss and held a bench trial. On October 6, 2011, the court issued its entry and judgment finding that West Boggs satisfied the requirements found in Ind. Code § 8-1-2-125(d), and it ordered Janet & Nathan to connect to the Sewer System,

10

specifically ordering that they contact West Boggs within ten days of the judgment to make such arrangements and that their connection be fully operational within 120 days, among other things.

Notices of appeal were timely filed in each matter, and on May 4, 2012, this court granted West Boggs' motion to consolidate appeals and consolidated the matters under Cause No. 14A01-1109-PL-427.

I.

The first issue is whether the court abused its discretion by denying the Waglers' Ind. Trial Rule 60(B) motions for relief from judgment. A grant of equitable relief under Ind. Trial Rule 60 is within the discretion of the trial court. We review a trial court's ruling on Rule 60 motions for abuse of discretion. Outback Steakhouse of Fla., Inc. v. Markley, 856 N.E.2d 65, 72 (Ind. 2006). "An abuse of discretion occurs when the trial court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief." Ford Motor Co. v. Ammerman, 705 N.E.2d 539, 558 (Ind. Ct. App. 1999), reh'g denied, trans. denied, cert. denied, 529 U.S. 1021, 120 S. Ct. 1424 (2000). When reviewing the trial court's determination, we will not reweigh the evidence. Zwiebel v. Zwiebel, 689 N.E.2d 746, 748 (Ind. Ct. App. 1997), reh'g denied, trans. denied.

Ind. Trial Rule 60(B) "affords relief in extraordinary circumstances which are not the result of any fault or negligence on the part of the movant." Dillard v. Dillard, 889 N.E.2d 28, 34 (Ind. Ct. App. 2008) (quoting Goldsmith v. Jones, 761 N.E.2d 471, 474 (Ind. Ct. App. 2002), reh'g denied). "On a motion for relief from judgment, the burden is

on the movant to demonstrate that relief is both necessary and just." Id. at 33 (quoting

G.B. v. State, 715 N.E.2d 951, 953 (Ind. Ct. App. 1999)). A trial court must balance the

alleged injustice suffered by the moving party against the interests of the party who

prevailed and society's interest in the finality of judgment. Showalter v. Brubaker, 650

N.E.2d 693, 698 (Ind. Ct. App. 1995).

The Waglers argue that the agreed entry and judgments filed in each of their cases

should be set aside pursuant to Ind. Trial Rule 60(B)(8), which provides:

> (B) Mistake--Excusable neglect--Newly discovered evidence--Fraud, etc. On motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons:
>
> * * * * *
>
> (8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4).
>
> The motion shall be filed within a reasonable time for reasons (5), (6), (7), and (8), and not more than one year after the judgment, order or proceeding was entered or taken for reasons (1), (2), (3), and (4). A movant filing a motion for reasons (1), (2), (3), (4), and (8) must allege a meritorious claim or defense. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation. . . .

Also, with respect to Trial Rule 60(B)(8)'s requirement that the movant establish a

meritorious claim or defense, we observe that a meritorious defense for the purposes of

Rule 60(B) is "one that would lead to a different result if the case were tried on the

merits." Butler v. State, 933 N.E.2d 33, 36 (Ind. Ct. App. 2010) (quoting Bunch v.

Himm, 879 N.E.2d 632, 637 (Ind. Ct. App. 2008)). "Absolute proof of the defense is not

necessary, but there must be 'enough admissible evidence to make a *prima facie*

12

showing' that 'the judgment would change and that the defaulted party would suffer an injustice if the judgment were allowed to stand.'" Id. (quoting Bunch, 879 N.E.2d at 637).

"The trial court's residual powers under subsection (8) may only be invoked upon a showing of exceptional circumstances justifying extraordinary relief." Brimhall v. Brewster, 864 N.E.2d 1148, 1153 (Ind. Ct. App. 2007), trans. denied (citation omitted). "Among other things, exceptional circumstances do not include mistake, surprise, or excusable neglect, which are set out in [Ind. Trial Rule] 60(B)(1)." This court has explained:

> T.R. 60(B)(8) is an omnibus provision which gives broad equitable power to the trial court in the exercise of its discretion and imposes a time limit based only on reasonableness. Nevertheless, under T.R. 60(B)(8), the party seeking relief from the judgment must show that its failure to act was not merely due to an omission involving the mistake, surprise or excusable neglect. Rather some extraordinary circumstances must be demonstrated affirmatively. This circumstance must be other than those circumstances enumerated in the preceding subsections of T.R. 60(B).

Id. (citation and quotation marks omitted).

The Waglers argue that, even though they "eventually authorized their attorney to sign an agreed entry by which they would connect," they "did not want to give in, felt coerced to assent to the agreement and received no consideration." Cause No. 121/122 Brief at 5.[7] The Waglers note in each of their briefs that "[a]fter much research, this

---

[7] The Waglers submitted one brief on behalf of Terry & Laura and Larry & Jennifer and another brief on behalf of Norman containing virtually identical arguments. We will refer to the couples' brief as the "Cause No. 121/122 Brief" and the other as "Norman's Brief."

We also note that the Waglers in Norman's Brief argue that Norman "eventually signed an agreed entry by which he would connect, however [he] did not want to give in, felt coerced to assent to the agreement and received no consideration." Norman's Brief at 5.

13

writer found no instance in Indiana where an agreed judgment was merely set aside, and in fact, the general rule of application is that after an agreed judgment is entered, a trial court has no authority to modify the judgment," but that "[h]owever, a motion made under T.R. 60 (B) is a motion asking the Court to use its equitable discretion." Cause No. 121/122 Brief at 6; Norman's Brief at 6. The Waglers argue, without citation to the record or authority and without elaboration, that "it is undisputed on the record that [each Agreed Judgment] was completely one-sided, and [they] received no consideration as the terms of the demands of West Boggs were the terms of the agreed entry." Cause No. 121/122 Brief at 6; Norman's Brief at 6.

The Waglers suggest that certain contract doctrines apply. First, the Waglers appear to argue that they were under duress when they entered into the agreed entries, arguing that "Larry Wagler stated in giving consent, it was like having a gun to his head, because he was told he had to succumb to the wishes of West Boggs and had no other choice," that Norman "did not willfully sign the agreement, he didn't want to sign it, he would have felt forced to go to court and the Amish try to avoid court," and that in both cases "[s]uch duress cannot legitimize a contract." Cause No. 121/122 Brief at 6; Norman's Brief at 6. The Waglers also argue that the doctrines of unconscionability or impossibility apply because the agreed entries are "contrary to 42 USC 2000cc,[8] their 1st

---

[8] 42 U.S.C. § 2000cc provides in relevant part as cited by the Waglers:

§ 2000cc. Protection of land use as religious exercise

(a) Substantial burdens

    (1)    General rule

14

Amendment Rights and their Indiana Constitutional Rights under Article I Sections 2 and 3" and, as such, "are akin to an unconscionable contract or one that is impossible to perform." Cause No. 121/122 Brief at 7; Norman's Brief at 7. Finally, the Waglers suggest that the agreed entry and judgments should be set aside because "the right of free exercise of religion is so important that it is included in both the Federal Constitution and the Indiana Constitution," and they rely upon their free exercise argument in demonstrating that they have a meritorious claim as required by Ind. Trial Rule 60(B)(8). Cause No. 121/122 Brief at 7; Norman's Brief at 7-8.

West Boggs begins by suggesting that the Waglers' briefs are "woefully deficient" and require "West Boggs – and the Court – to develop the Waglers' arguments for them in order to respond," and that accordingly the Waglers have waived their arguments on appeal. Appellee's Brief at 11; Appellee's Consolidated Brief at 16.[9] West Boggs argues

---

No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--

    (A)    is in furtherance of a compelling governmental interest; and

    (B)    is the least restrictive means of furthering that compelling governmental interest.

(2)    Scope of application

This subsection applies in any case in which--

    (A)    the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability; . . .

[9] West Boggs submitted a brief on February 27, 2012, as a response to the Cause No. 121/122

15

that "the Waglers' Argument section is devoid of any citation to the Record . . . leaving West Boggs and the Court to comb the Appendix or Transcript to try to find the sources of [their] contentions. Nor do the Waglers provide cogent reasoning or analysis." Appellee's Brief at 11-12. West Boggs argues that "[a]t its worst, the Waglers make random legal assertions without referencing any supporting authority" and that "[a]t its best, the Waglers' argument is less than five pages of abstract legal propositions without any cogent reasoning, explanation, or application," noting that "[w]ith respect to their Trial Rule 60(B) contentions, in barely two pages of argument the Waglers loosely assert a myriad of claims of equitable discretion, applicability of contract principles, lack of consideration, one-sidedness, duress, unconscionability, legal impossibility, agreement modification, and constitutional rights, all with barely more than a case citation." Id. at 12. West Boggs also submits that the Waglers "assert claims of constitutional religious protections – legal jurisprudence that accounts for libraries of material – in a two and one-half page virtual wave of the hand." Id.

Regarding the merits of the Waglers' contentions, West Boggs argues that "[t]he Waglers' request to avoid their Agreed Judgments has been rejected by over a century of Indiana case law," and indeed "[t]his Court has time and again confirmed that 'T.R. 60(B) is inapplicable to the modification of a pre-existing agreed judgment agreed to by

Brief filed by the Waglers. West Boggs also submitted a brief, titled "Consolidated Brief of Appellee," on June 4, 2012, following the briefs submitted by Norman and Janet & Nathan (as well as the Cause No. 121/122 reply brief). Regarding West Boggs' waiver argument, in their consolidated brief they incorporate by reference their waiver argument set forth in their appellee's brief, noting that Norman's brief "is no less deficient in supporting authority, explanation, or application than the original brief, and Norman apparently did not see any need to develop it further notwithstanding that his Appellant's Brief was filed after West Boggs filed its Brief of Appellee and raised the issue . . . ." Appellee's Consolidated Brief at 16.

the parties to that judgment,'" noting also that the Waglers concede as much in their briefs. Appellee's Brief at 15-16 (quoting State ex rel. Prosser v. Ind. Waste Sys., Inc., 603 N.E.2d 181, 186 (Ind. Ct. Ap. 1992)). West Boggs argues that to the extent this court, notably in the recent case of Evans v. Evans, has relied upon Ind. Trial Rule 60(B) to modify agreed judgments, "[e]ven assuming Evans could be read as upholding an agreed judgment modification, it still at best only reconfirms that such a judgment may be clarified to avoid a legal impossibility" and that "the Waglers are not merely seeking a clarification to their Agreed Judgments, but are asking to set them aside entirely and reopen the proceedings altogether." Id. at 17.

West Boggs also argues that the Waglers waived their contractual arguments because the arguments raised in their motions to set aside were confined to "their religious argument," that similarly "in their argument to the trial court at the August hearing, the Waglers only argued religious grounds," and that "[n]ot until after evidence was taken at the hearing did the Waglers raise their contractual claims, for the first time," in a brief submitted following the hearing. Id. at 19. West Boggs argues that "[e]ven assuming the Waglers had not waived their contractual arguments, an Agreed Judgment entered into with full knowledge and legal representation is not unconscionable simply because a party regrets its decision," and it notes regarding the agreed entries in Cause Numbers 121 and 122 that the agreed entry was signed by counsel, and that in Norman's case, although he had parted ways with attorney Marilyn Hartman a few days before, Norman himself signed the agreed judgment, it was the same as those signed by Hartman under Causes Numbers 121 and 122 and indeed "had been negotiated by – with Ms.

17

Hartman over many months." Id. at 20; Appellee's Consolidated Brief at 18. Finally, regarding the Waglers' religious freedom arguments, West Boggs contends that "[t]he Waglers have not only failed to articulate a meritorious argument, but there is no religious protection against connecting to a religion-neutral public sewer system." Appellee's Brief at 22.

The Waglers filed two reply briefs – one corresponding with Cause Numbers 121 and 122 and one on behalf of Norman and Janet & Nathan. In the former, the Waglers respond to West Boggs' waiver argument by noting that "[t]his writer was taught in law school and appellate seminars that if you once cite Facts and the Statement of the Case to the record, that thereafter for ease of reading to the Appellate tribunal, those citations need not be repeated in the argument section." Cause No. 121/122 Reply Brief at 2. The Waglers note:

> The example used by West Boggs on page 11 where the Waglers stated 'it is undisputed on the record that the Agreement was completely one-sided and the Waglers received no consideration' that West Boggs and the court would have to 'comb' the record to find the sources of the contentions. On page 3 of the Waglers' Brief in the Statement of Facts, that argument is cited to the transcript in paragraphs 4 and 5 of the Statement of Facts. No 'combing' required.

Id. at 2-3. The Waglers also acknowledge that they omitted "two case citations on page 6 of their brief" and include the relevant citations, and they provide a pinpoint citation to a cited case. Id. at 3. Regarding the contract issues, the Waglers argue that "West Boggs brought up the issue in their response to the Rule 60 B motion" and thus they "cannot bring forth an issue, listen to evidence on the issue at trial and then claim the issue is not properly before this court. Id. at 4.

18

Initially, we note that we are inclined to agree with West Boggs that the Waglers' briefs fall short of the requirements outlined by the Indiana Rules of Appellate Procedure, and we agree in particular with West Boggs' characterization of the Waglers' briefs as being mostly composed of "abstract legal propositions without any cogent reasoning, explanation, or application." Thus, to the extent that the Waglers present arguments which are not cogent, we find those arguments to be waived. See Masonic Temple Ass'n of Crawfordsville v. Ind. Farmers Mut. Ins., 837 N.E.2d 1032, 1037 (Ind. Ct. App. 2005) (noting that "[a]n appellant's argument must contain his contentions on the issues presented, supported by cogent reasoning, and each contention must be supported by citations to the authorities, statutes, and the appendix or parts of the record relied on" and that "[a] party waives any issue for which it fails to provide argument and citations") (citing Ind. Appellate Rule 46(A)(8)(a)), reh'g denied; see also Loomis v. Ameritech Corp., 764 N.E.2d 658, 668 (Ind. Ct. App. 2002) (holding argument waived for failure to cite authority or provide cogent argument), reh'g denied, trans. denied.

Waiver notwithstanding, we observe that it is a "well-known legal premise that '[a]fter entering an agreed judgment, the trial court has no authority to modify or change the judgment in any essential or material manner.'" Evans v. Evans, 946 N.E.2d 1200, 1204 (Ind. Ct. App. 2011) (quoting Mitchell v. Stevenson, 677 N.E.2d 551, 565 (Ind. Ct. App. 1997), trans. denied); see also Ryan v. Ryan, 972 N.E.2d 359, 362 (Ind. 2012) (noting that the property settlement agreement incorporated into a dissolution decree was grounded in contract law which "is economic in nature—an ordinary contract. As with other contracts, a division of property may only be modified according to the terms of the

19

agreement, if the parties' [sic] consent, or if fraud or duress occurs") (quoting Snow v. England, 862 N.E.2d 664, 668 (Ind. 2007)) (citation omitted); Ind. Waste Sys., 603 N.E.2d at 186 n.8 ("A judgment entered by consent which does not require the Court's continuing supervision of any changing conduct or conditions may not be *altered or modified* by the Court in any material manner, absent a showing by [the movant] of fraud, mistake or other contractual ground for modification.") (emphasis added).

However, here the Waglers are not requesting a *modification* of the agreed entry and judgments entered into; rather, the Waglers are requesting that, pursuant to Ind. Trial Rule 60(B)(8), this court relieve them from the judgments by setting them aside in their entirety, arguing that they have demonstrated "exceptional circumstances justifying extraordinary relief." Brimhall, 864 N.E.2d at 1153. Indeed, contrary to the position taken by West Boggs and the corresponding concession made by the Waglers, there are examples in Indiana case law in which Subsection 8 has been used in such a way. In In re Paternity of T.G.T., mother and father, who were not married, conceived a child, and during the pregnancy father's sister arranged for them to meet with an attorney to establish father's paternity. 803 N.E.2d 1225, 1226 (Ind. Ct. App. 2004), reh'g denied, trans. denied. At the meeting, the attorney advised mother that he represented father and that if she wanted an attorney she should hire one, but mother did not do so. Id. The attorney prepared a joint petition to establish paternity "which included a request that the trial court enter an order regarding custody, visitation rights, and child support after the child was born," and he filed the petition, an appearance form on behalf of father, and a notice of hearing. Id. The hearing was continued and never rescheduled, and the

attorney "prepared a 'Judgment Entry' establishing Father's paternity, stating that the parties would share joint custody of their unborn child and that Father would have primary physical custody. In addition, the parties agreed to 'share equally the financial responsibility for the care of the unborn child.'" Id. The proposed judgment indicated that the attorney was representing father and that mother was *pro se*. Id. Mother and father signed their names and indicated that they "read and agreed to" the terms of the proposed judgment, and on September 23, 2002, the court signed the judgment. Id. The court's order did not address child support or visitation, and Mother was not served with a copy of the judgment. Id. The child was born in October 2002, mother and father ceased living together in March 2003, and mother filed a motion for relief from judgment under Trial Rule 60(B)(1), (3), and (8). Id. The trial court denied mother's motion. Id.

On appeal, we analyzed mother's claim under Ind. Trial Rule 60(B)(8), noting at the outset:

> It is undisputed that Mother was not represented by counsel in this paternity action and that she was not served with copies of any of the pleadings. Perhaps most importantly, Mother did not receive service of notice of the hearing on the joint petition to establish paternity, and it is undisputed that she never agreed to forgo that hearing. It is also undisputed that no hearing was ever held on the petition. Thus, neither party submitted evidence regarding the child's best interests, and nothing was submitted regarding provisions for child support or visitation. Indeed, the trial court did not make any determination regarding the child's best interests, child support, or visitation. Both the parties' joint petition and the judgment are silent on those issues.

Id. at 1227.

This court noted that the trial court, in denying mother's motion, "found that while it 'did not strictly comply with the statutory framework cited by the Mother, the Joint

21

Petition to Establish Paternity . . . and the Judgment Entry . . . substantially comply with the requirements of I.C. 31-14-10-3 and Trial Rule 58." Id. We disagreed, noting that certain statutory provisions were not followed and that accordingly the court was not authorized to enter judgment without first holding a hearing as required by Ind. Code § 31-14-10-1. Id. at 1227-1228. This court also highlighted that the record did not indicate that the court considered the best interests of the child pursuant to Ind. Code § 31-14-13-2 and that "it is the duty of the trial court to determine if any agreement is in the best interests of the child." Id. at 1228 (emphasis omitted). We granted relief under Trial Rule 60(B)(8), holding that the trial court's "failure to comply with the relevant statutory scheme" was great and that accordingly, "under all the circumstances," relief from judgment was clearly demonstrated.[10] Id. Cf. Summit Account & Computer Serv. v. Hogge, 608 N.E.2d 1003, 1006 (Ind. Ct. App. 1993) (reversing the trial court's grant of the defendant's motion to set aside pursuant to Ind. Trial Rule 60(B)(8) on grounds that the relief sought by the defendant was more appropriately asserted under Ind. Trial Rule 60(B)(1) and 60(B)(3), but the defendant was time-barred from seeking relief under those subsections and he "cannot now circumvent the time limitations of T.R. 60(B)(1) or (3) by attempting to rely on T.R. 60(B)(8)").

As noted above, the Waglers, in an attempt to demonstrate that exceptional circumstances justifying extraordinary relief are present in their cases, suggest a number of reasons, most of which are grounded in contract law. To the extent that the Waglers

---

[10] In so holding, we highlighted "the strong policy considerations where child custody is at issue, the complete lack of evidence regarding the child's best interests in this case, and the lack of any provision for child support or visitation" as reasons that the court abused its discretion in denying mother's motion. T.G.T., 803 N.E.2d at 1230.

22

suggest that the agreed entry and judgments were a product of duress, we note that the Waglers state in the Cause No. 121/122 brief that "Larry Wagler stated in giving consent, it was like having a gun to his head, because he was told he had to succumb to the wishes of West Boggs and had no other choice." Cause No. 121/122 Brief at 6. Also, Norman's brief notes that he testified that "in giving consent, he did not willfully sign the agreement, he didn't want to sign it, he would have felt forced to go to court and the Amish try to avoid court," and again that "[h]e didn't think he had an option because he was told he had to succumb to the wishes of West Boggs and had no other choice." Norman's Brief at 6 (citing Norman's Transcript at 21, 21, 28-30, 56).

Neither of the Waglers' briefs cite to authority regarding the law of duress. We observe that contracts induced by fraud or duress are voidable. Raymundo v. Hammond Clinic Ass'n, 449 N.E.2d 276, 283 (Ind. 1983). "[I]n order to avoid a contract on the basis of duress, there must be an actual or threatened violence of restraint of a man's person contrary to law, to compel him to enter into a contract or discharge one." Carrasco v. Grubb, 824 N.E.2d 705, 711 (Ind. Ct. App. 2005), reh'g denied, trans. denied (quotations and citation omitted). In deciding whether a person signed a document under duress, "the ultimate fact to be determined is whether or not the purported victim was deprived of the free exercise of his own will." Raymundo, 449 N.E.2d at 283. However, as West Boggs highlights, the agreed entry and judgments were negotiated by the Waglers' counsel, Ms. Hartman, and, in any event, such evidence (or the lack thereof) is insufficient to prove duress.[11]

---

[11] We note that Ind. Trial Rule 60(B)(3) allows for relief from a judgment for "fraud (whether

23

The Waglers also invoke the doctrines of unconscionability and impossibility and argue that either or both of these doctrines apply. First, regarding unconscionability, "we note that to be unconscionable, a contract 'must be such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept.'" Precision Homes of Ind., Inc. v. Pickford, 844 N.E.2d 126, 132 (Ind. Ct. App. 2006) (quoting Progressive Constr. & Eng'g Co. v. Ind. & Mich. Elec. Co., 533 N.E.2d 1279, 1286 (Ind. Ct. App. 1989)), trans. denied. "Often there are circumstances that show that there was unequal bargaining power at the time the contract was executed that led the party with lesser power to enter into it unwillingly or without knowledge of its terms." Id. (citing Dan Purvis Drugs, Inc. v. Aetna Life Ins. Co., 412 N.E.2d 129, 131 (Ind. Ct. App. 1980)).

Also, impossibility is an affirmative defense to performance of an executory contract and is generally invoked as a defense to an action for damages. Bernel v. Bernel, 930 N.E.2d 673, 683 (Ind. Ct. App. 2010), trans. denied. Impossibility has been defined as "where the performance of a contract becomes impossible, non-performance is excused, and no damages can be recovered." Dove v. Rose Acre Farms, Inc., 434 N.E.2d 931, 935-936 (Ind. Ct. App. 1982). To invoke impossibility, one must demonstrate that performance is "not merely difficult or relatively impossible, but absolutely impossible, owing to the act of God, the act of the law, or the loss or destruction of the subject-matter of the contract." Ross Clinic, Inc. v. Tabion, 419 N.E.2d 219, 223 (Ind. Ct. App. 1981)

heretofore denominated intrinsic or extrinsic), misrepresentation, *or other misconduct of an adverse party*; . . ." As noted above, Trial Rule 60(B)(8) provides relief from a judgment for "any reason justifying relief from the operation of the judgment, *other than those reasons set forth in sub-paragraphs (1), (2),* (3)*, and (4)*. (Emphases added).

(quoting Krause v. Bd. of Trustees of Sch. Town of Crothersville, 162 Ind. 278, 283-284, 70 N.E. 264, 265 (1904)).

As noted above, the Waglers cite to 42 U.S.C. § 2000cc, as well as the First Amendment of the U.S. Constitution and Article 1, Sections 2 and 3 of the Indiana Constitution, in arguing that the agreed judgments are either unconscionable or impossible to perform based upon the freedom of religion. The Waglers provide some discussion of how these religious freedom provisions apply in the section of their briefs arguing that they have a meritorious claim; however, they do not articulate at any point how such provisions, if applicable, satisfy Subsection 8's requirement that the movant demonstrate that exceptional circumstances justifying extraordinary relief are present at this stage. Indeed, these provisions were in existence when the Waglers entered into their agreed entries and judgments which again were negotiated by counsel. They do not attempt to apply the tests for unconscionability or impossibility, and indeed they do not even articulate the test for impossibility.[12] We do not find the Waglers' unconscionability and impossibility arguments to be persuasive.

Further, the Waglers also appear to argue that the agreed entry and judgments fail because they "received no consideration." "The basic requirements are offer, acceptance, consideration, and 'a meeting of the minds of the contracting parties.'" Morris v. Crain, 969 N.E.2d 119, 123 (Ind. Ct. App. 2012). "To constitute consideration, there must be a

---

[12] The Waglers do note in their briefs that "[t]he basic test of unconscionability in commercial matters is whether the clauses of a contract are so one-sided as to make them unconscionable under circumstances existing at the time of making of the contract. *Weaver*[ *v. American Oil*, 276 N.E.2d 144, 146 (Ind. 1971)]." Cause No. 121/122 Brief at 7; Norman's Brief at 7. However, the Waglers do not apply this test to the facts of their cases or craft an argument explaining how the religious freedom provisions to which they cite bear on the test for unconscionability.

benefit accruing to the promisor or a detriment to the promisee." Ind. Dep't of State Revenue v. Belterra Resort Ind., LLC, 935 N.E.2d 174, 179 (Ind. 2010), modified on reh'g on other grounds, 942 N.E.2d 796 (2011). "A benefit is a legal right given to the promisor to which the promisor would not otherwise be entitled." Id. "A detriment on the other hand is a legal right the promisee has forborne." Id. "The doing of an act by one at the request of another which may be a detrimental inconvenience, however slight, to the party doing it or may be a benefit, however slight, to the party at whose request it is performed, is legal consideration for a promise by such requesting party." Id. "In the end, consideration—no matter what its form—consists of a bargained-for exchange." Id. (quotation omitted).

In each of the agreed entry and judgments, the Waglers agreed to connect their respective properties to the Sewer System and to reimburse West Boggs for the purchase of a "Grinder." Volume I Appendix at 94. West Boggs agreed that it would "maintain, at its cost and expense, the line carrying sewage and waste water from the Grinder to the Sewer System (the 'Service line') and electrical service to the Grinder." Id. Also, we note that Norman Wagler indicated at his hearing that he signed the agreed entry in part because he "thought there might be some hope" he would not have to go to court, which is something that the Amish like to avoid. Norman's Transcript at 56. Under the circumstances, we conclude that the Waglers' arguments fail.

We conclude that the court did not abuse its discretion when it denied the Waglers' motions to set aside based upon Ind. Trial Rule 60(B)(8).

26

II.

The second issue is whether the court erred in directing Janet & Nathan to connect to the Sewer System. Where, as here, the trial court enters findings and conclusions *sua sponte*, we apply the standard of review set out in Trial Rule 52. Chidester v. City of Hobart, 631 N.E.2d 908, 909 (Ind. 1994). "We determine whether the evidence supports the findings and the findings support the judgment." Bowyer v. Ind. Dep't of Natural Res., 944 N.E.2d 972, 983 (Ind. Ct. App. 2011) (quoting Garling v. Ind. Dep't of Natural Res., 766 N.E.2d 409, 410 (Ind. Ct. App. 2002) (quoting Chidester, 631 N.E.2d at 910), trans. denied), reh'g denied. "In deference to the trial court's proximity to the issues, 'we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment.'" Id. (quoting Garling, 766 N.E.2d at 410) (quoting Oil Supply Co. v. Hires Parts Serv., Inc., 726 N.E.2d 246, 248 (Ind. 2000)). "We do not reweigh the evidence, but only consider the evidence favorable to the trial court's judgment." Id.

While we review findings of fact under the clearly erroneous standard, we review *de novo* a trial court's conclusions of law. Id.; Fobar v. Vonderahe, 771 N.E.2d 57, 59 (Ind. 2002). "Where cases present mixed issues of fact and law, we have described the review as applying an abuse of discretion standard." Bowyer, 944 N.E.2d at 983; Fraley v. Minger, 829 N.E.2d 476, 482 (Ind. 2005). We will conclude a judgment is clearly erroneous if no evidence supports the findings, the findings fail to support the judgment, or if the trial court applies the incorrect legal standard. Bowyer, 944 N.E.2d at 983-984. "In order to determine that a finding or conclusion is clearly erroneous, an appellate

court's review of the evidence must leave it with the firm conviction that a mistake has been made." Id.; Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997). However, *sua sponte* findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. Tracy v. Morell, 948 N.E.2d 855, 862 (Ind. Ct. App. 2011). A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. Id.

Janet & Nathan contend that the trial court erred in its order in stating that West Boggs provided them with notice directing them to connect the property to the Sewer System. They argue that their issue raised is one of statutory interpretation, noting that Ind. Code § 8-1-2-125(d) "doesn't require [West Boggs] to force connection" and instead states that a sewer district "'may require' connection, not 'shall require' connection." Id. at 6. Janet & Nathan assert that "[i]t only seems very plausible that the legislature didn't intend for such narrow construction of the statute that the word' may' [sic] should turn into 'shall', if there is no evidence that a homeowner is polluting." Id. They also argue that the letter from West Boggs notifying them to connect to the Sewer System says West Boggs "may" require connection and that they "should" connect by a certain date, and that accordingly "[t]he trial court simply erred when it found '. . . West Boggs provided [them] with notice **directing** [them] to connect . . .'." Id. at 6-7.

West Boggs argues that while Janet & Nathan are correct that Section 125(d) gives West Boggs discretion to determine whether the property owner must connect, a property owner does not have discretion to refuse connection if there is an available sewer line within three hundred feet of their property line and the utility has given ninety-days

28

notice by certified mail. West Boggs argues that it "exercised its admitted discretion, and Janet [&] Nathan's 'judicial construction' argument over whether West Boggs 'may' or 'shall' force them to connect is irrelevant given that West Boggs exercised its option." Id. West Boggs also asserts that Section 125(d) does not require any specific terminology within the notice, only that it be sent by certified mail and provide ninety days to connect, and that there is no dispute that West Boggs did so. West Boggs argues that "[t]here was no testimony or evidence at trial that [Janet & Nathan] were confused by the notice or believed they were not being required to connect," that they did not even raise the argument at trial, and that indeed if Janet & Nathan "did not believe that West Boggs' notice required them to connect, then Nathan Wagler would not have attempted to inappropriately make the connection himself . . . using a grinder pump that was incompatible with West Boggs' system." Id. at 26.

The relevant version of Ind. Code § 8-1-2-125(d) provides:

Except as provided in subsection (e), a not-for-profit public sewer utility may require connection to its sewer system of property producing sewage or similar waste and require the discontinuance of use of privies, cesspools, septic tanks, and similar structures, if:

(1) there is an available sanitary sewer within three hundred (300) feet of the property line; and

(2) the utility has given written notice by certified mail to the property owner at the address of the property at least ninety (90) days before the date for connection stated in the notice.

We observe that "[a] question of statutory interpretation is a matter of law to be determined *de novo* by this court." Wastewater One, LLC v. Floyd Cnty. Bd. of Zoning Appeals, 947 N.E.2d 1040, 1047 (Ind. Ct. App. 2011), trans. denied. When interpreting a

29

statute, we independently review a statute's meaning and apply it to the facts of the case under review. Bolin v. Wingert, 764 N.E.2d 201, 204 (Ind. 2002). "The first step in interpreting any Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question." St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele, 766 N.E.2d 699, 703-704 (Ind. 2002). If a statute is unambiguous, we must give the statute its clear and plain meaning. Bolin, 764 N.E.2d at 204. A statute is unambiguous if it is not susceptible to more than one interpretation. Elmer Buchta Trucking, Inc. v. Stanley, 744 N.E.2d 939, 942 (Ind. 2001). However, if a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. Bolin, 764 N.E.2d at 204. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. Id.

We agree with West Boggs that the version of Ind. Code § 8-1-2-125(d) in effect at the relevant time plainly gives a not-for-profit sewer utility discretion in deciding whether to require a property owner to connect to a sewer system, but that upon request by the utility the property owner is required to comply with the utility's directive provided that (1) the sewer is within 300 feet of the property line; and (2) the utility provides written notice by certified mail at least ninety days before the connection date stated in the notice.[13] To the extent that Janet & Nathan suggest that the statute gives them some discretion, we note that the discretion in the statute refers to that of the utility

---

[13] As noted above, the statute was subsequently amended, and the current version allows for property owners to be exempted from a requirement to connect to a not-for-profit sewer system if certain conditions are met.

30

only, not that of the property owner, and we decline to infer that such discretion may be imputed to Janet & Nathan and provide them a mechanism to decline West Boggs' directive.

To the extent that Janet & Nathan argue that the court erred in finding that West Boggs provided them with notice directing them to connect to the Sewer System, Janet & Nathan do not dispute that, on September 4, 2008, West Boggs directed a letter to them by certified mail which stated in part:

> Pursuant to I.C. §8-1-2-125, a not for profit utility, such as [West Boggs], *may require connection* to its sewer system of property producing sewage or similar waste and require the discontinuance of use of privies, cesspools, septic tanks, and similar structures, if there is an available sanitary sewer within three hundred feet of the property line. [West Boggs's] sanitary sewer facilities *are within three hundred feet (300) of your property line*, and [West Boggs] is *hereby notifying you that the system is now operational and that connection should be made by this property to [West Boggs's] system on or before **December 04, 2008***.
>
> Please contact the [West Boggs] office to arrange connection or with any questions you might have regarding the utility or this process. . . .

Janet & Nathan's Appendix at 85 (emphases added). When Janet & Nathan did not comply, West Boggs, on February 10, 2009, filed its complaint requesting an order requiring them to "promptly" connect into the Sewer System and pay all of the associated costs. Id. at 83-84. Although the letter stated that "connection should be made," we do not believe the court clearly erred when it found that the letter directed Janet & Nathan to connect to the Sewer System and did not provide them with a choice of whether to do so. We conclude that the court did not err in directing Janet & Nathan to connect to the Sewer System.

31

The final issue as raised by West Boggs is whether the trial court erred in denying its requests for attorney fees and costs against each party that filed an Ind. Trial Rule 60(B) motion, and whether West Boggs is entitled to appellate attorney fees against each of the Appellants. As an initial matter, we note that the trial court in Norman's case awarded West Boggs potential attorney fees should he fail to connect within sixty days. Also, West Boggs filed motions requesting attorney fees and costs in Terry & Laura's and Larry & Jennifer's cases, and the court denied West Boggs' motion against Larry & Jennifer on September 16, 2011 and against Terry & Laura on September 20, 2011 by entries in their respective chronological case summaries.

Ind. Code § 34-52-1-1, cited by West Boggs, provides:

(a)    In all civil actions, the party recovering judgment shall recover costs, except in those cases in which a different provision is made by law.

(b)    In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

   (1)    brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

   (2)    continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

   (3)    litigated the action in bad faith.

(c)    The award of fees under subsection (b) does not prevent a prevailing party from bringing an action against another party for abuse of process arising in any part on the same facts. However, the prevailing party may not recover the same attorney's fees twice.

A claim or defense is "frivolous" if it is made primarily to harass or maliciously injure another; if counsel is unable to make a good faith and rational argument on the merits of the action; or if counsel is unable to support the action by a good faith and rational argument for extension, modification, or reversal of existing law. America's Directories Inc., Inc. v. Stellhorn One Hour Photo, Inc., 833 N.E.2d 1059, 1070-1071 (Ind. Ct. App. 2005), trans. denied. A claim or defense is "unreasonable" if, based upon the totality of the circumstances, including the law and facts known at the time, no reasonable attorney would consider the claim justified or worthy of litigation. Id. at 1071. A claim or defense is groundless if no facts exist which support the legal claim relied on and presented by the losing party. SLR Plumbing & Sewer, Inc. v. Turk, 757 N.E.2d 193, 201 (Ind. Ct. App. 2001). However, an action is not groundless merely because a party loses on the merits. Id. Further, bad faith is demonstrated where the party presenting the claim is affirmatively operating with furtive design or ill will. SJS Refractory Co., LLC v. Empire Refractory Sales, Inc., 952 N.E.2d 758, 770 (Ind. Ct. App. 2011).

"[T]he trial court's decision to award attorney's fees and any amount thereof is reviewed for an abuse of discretion." Purcell v. Old Nat. Bank, 972 N.E.2d 835, 843 (Ind. 2012). "A trial court abuses its discretion if its decision clearly contravenes the logic and effect of the facts and circumstances or if the trial court has misinterpreted the law."[14] Id. Also we observe that the Indiana Supreme Court recently held that when a

_____

[14] We note that the Court also observed that where the trial court awards attorney fees and enters findings and conclusions thereon, "[t]he trial court's decision to award attorney's fees under § 34-52-1-1 is subject to a multi-level review: the trial court's findings of facts are reviewed under the clearly

trial court grants a petition for attorneys' fees without making special findings of fact, "we look to the basis of the prevailing party's petition and view the court's order as an implicit legal conclusion consistent with the main thrust of the petition—that the claim or defense at issue was frivolous, unreasonable, groundless, or litigated in bad faith." R.L. Turner Corp. v. Town of Brownsburg, 963 N.E.2d 453, 461 (Ind. 2012).

West Boggs argues that "[t]he Waglers' appeal is little more than another cursory attempt . . . to delay and frustrate the development of West Boggs' sewer system." Appellee's Brief at 35. West Boggs argues that "[g]iven the Waglers' out-right refusal to comply based on a Rule 60(B) motion that they even conceded was inapplicable to an agreed entry, the trial court should have at least permitted West Boggs to recover its fees." Id. at 36 (citation omitted). West Boggs also contends that "the Agreed Judgments themselves required the Waglers to reimburse West Boggs' expenses for such an omission: 'If West Boggs incurs costs and expenses because of the negligent acts or omission of the Waglers, then the Waglers shall promptly reimburse West Boggs." Id. (quoting Volume I Appendix at 86; Volume II Appendix at 237).

In each of West Boggs' verified motions for an award of attorneys' fees and costs, West Boggs stated in relevant part:

> 2. The Waglers agreed to resolve this lawsuit in January of 2011when they entered into the Agreed Entry. . . . A few months (and one attorney) later, the Waglers argued that Agreed Entry was meaningless. In its Order, however, this Court determined that the Waglers' position was squarely contrary to Indiana law. Specifically, Indiana law does not allow a

---

erroneous standard and legal conclusions regarding whether the litigant's claim was frivolous, unreasonable, or groundless are reviewed de novo." Purcell, 972 N.E.2d at 843 (citing R.L. Turner Corp. v. Town of Brownsburg, 963 N.E.2d 453, 457 (Ind. 2012)). Here, the court denied an award of attorneys' fees by entry in the CCS.

34

party to a lawsuit to undo an agreed entry or an agreed judgment through the use of Rule 60(B). As such, the Rule 60(B) Motion should not have been filed. And West Boggs should be reimbursed for the costs and expenses, including reasonable attorneys' fees, it has incurred as a result of being forced to respond to it.

Volume I Appendix at 20.[15] As noted above, the trial court denied each verified motion by an entry on the respective CCSs.

First, we observe that West Boggs' suggestion that the agreed entry and judgments entered into by Terry & Laura and Larry & Jennifer required reimbursement is misplaced because the cited paragraph concerns "negligent acts or omissions" associated with installing or maintaining the sewer connection; West Boggs does not demonstrate that the Waglers committed a negligent act when they filed their Trial Rule 60(B) motions. To the extent that West Boggs suggests that the Waglers' goal in this litigation was to merely delay and frustrate the development of West Boggs' sewer system, we find that despite the shortcomings in their briefs and arguments, their decisions to hire new counsel and file motions to have the agreed entry and judgments set aside and assert that, as members of the Old Order Amish Church, they had meritorious claims based upon freedom of religion provisions found in the First Amendment to the U.S. Constitution and Article 1, Sections 2 and 3 of the Indiana Constitution, were not frivolous, unreasonable, or groundless and were not in bad faith. Accordingly we conclude that the trial court did not abuse its discretion in denying West Boggs' request for attorney fees and costs.

---

[15] The relevant portion of West Boggs' verified motion against Larry & Jennifer reads identical to the above filed against Terry & Laura except that the dates of "January of 2011" and "January 21, 2011" were changed to read "March of 2011" and "March 2, 2011," respectively. Volume II Appendix at 159.

Regarding appellate attorney fees, Ind. Appellate Rule 66(E) provides that this court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Our discretion to award attorney fees is limited to instances when an appeal is "permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." Orr v. Turco Mfg. Co., Inc., 512 N.E.2d 151, 152 (Ind. 1987). An appellate tribunal must use extreme restraint in exercising its discretionary power to award damages on appeal "because of the potential chilling effect upon the exercise of the right to appeal." Tioga Pines Living Ctr., Inc. v. Ind. Family & Social Serv. Admin., 760 N.E.2d 1080, 1087 (Ind. Ct. App. 2001), affirmed on reh'g, trans. denied. Indiana appellate courts have classified claims for appellate attorney fees into substantive and procedural bad faith claims. Boczar v. Meridian St. Found., 749 N.E.2d 87, 95 (Ind. Ct. App. 2001). To prevail on a substantive bad faith claim, the party must show the appellant's contentions and arguments are utterly void of all plausibility. Id. Substantive bad faith "implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." Wallace v. Rosen, 765 N.E.2d 192, 201 (Ind. Ct. App. 2002). To prevail on a procedural bad faith claim, a party must show that the appellant has flagrantly disregarded the form and content requirements of the rules of procedure, omitted or misstated relevant facts, and filed briefs written in a manner calculated to require the maximum expenditure of time by the opposing party and reviewing court. Kozlowski v. Lake County Plan Comm'n, 927 N.E.2d 404, 412 (Ind. Ct. App. 2010), trans. denied. Appellant's conduct need not be "deliberate or by design" to support a procedural bad

36

faith claim. <u>Thacker v. Wentzel</u>, 797 N.E.2d 342, 347 (Ind. Ct. App. 2003) (quoting <u>Boczar</u>, 749 N.E.2d at 95).

For the same reasons as expressed above, we cannot say that the Appellants' claims are the product of substantive bad faith. Also, although the Appellants' briefs are deficient in citation in the argument sections, as the Appellants note, they do provide citation to the record in their statements of fact. Also, we cannot say that the Appellants in their briefs misstated relevant facts or wrote their briefs in a manner requiring maximum expenditure of time by West Boggs or this court. Accordingly, we decline to award West Boggs appellate attorney fees.

For the foregoing reasons, we affirm the orders of the trial courts and the denial of attorney fees and costs, and we deny West Boggs' request for appellate attorney fees.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.